UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
FUSION LEARNING, INC.,             )
                                   )
                Plaintiff,         )
                                   )          Civil Action
v.                                 )          No. 21-cv-11059-PBS
                                   )
ANDOVER SCHOOL COMMITTEE, et. al,  )
                                   )
                Defendants.        )
                                   )
_____)

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

June 29, 2022

Saris, D.J.

### INTRODUCTION

Plaintiff Fusion Learning, Inc. ("Fusion Academy") brought this claim under 42 U.S.C. § 1983 against the Andover School Committee, the Town of Andover, and three school officials in their personal capacities: Superintendent of Schools Claudia Bach, Assistant Superintendent Sandra Trach, and former Superintendent Sheldon Berman (Count I). Fusion Academy alleges that Defendants violated its rights to academic freedom, procedural due process, and substantive due process by twice denying its application to operate a private school in Andover. It further seeks a declaration pursuant to 28 U.S.C. § 2201 that its applications satisfied the requirements of M.G.L. c. 76, § 1 (Count II). Defendants moved to dismiss.

After hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** the Motion to Dismiss (Dkt. 15).

## FACTUAL BACKGROUND

The following facts are alleged in the Complaint.

### I.    The Parties

Plaintiff Fusion Academy owns and operates schools that it describes as "an alternative private option for parents of children in grades 6-12 who often struggle in traditional school settings," utilizing one-on-one instruction "individually paced for each student," combined with teacher-supervised "digital instruction sessions." Dkt. 1 ¶¶ 10, 106. It operates private schools for grades 6-12 in 17 States and the District of Columbia, including three in Massachusetts: in Newton, Burlington, and Hingham.

The Andover School Committee ("School Committee") is the entity that makes educational policies, including for the approval of applications to operate private schools in the town. See id. ¶ 7; M.G.L. c. 76, § 1.

### II.   Fusion Academy's First Application

On May 29, 2018, Fusion Academy submitted its first application to operate a private school in Andover. The School Committee designated Defendants Trach and Berman to review the application and make a recommendation on approval. They indicated to Fusion Academy that securing a certificate of occupancy was a pre-condition to completion of the review process. In September

2018, Fusion Academy secured a school site pursuant to a written lease for ten years and six months, with a cumulative obligation of two and a half million dollars, and proceeded to build out the campus at a cost of almost one and a half million dollars.

On April 10, 2019, Trach submitted a written recommendation against approval; Berman concurred. The recommendation expressed concern that Fusion Academy's teaching model, which included one-on-one instruction and asynchronized learning, relied on fewer teacher-led hours of instruction than the model utilized by Andover public schools, and so might not adequately prepare students for higher education. In Trach and Berman's view, the two models were "in no way comparable." Dkt. 1 ¶ 62. The recommendation also emphasized that Fusion Academy lacked an on-site nurse and failed to set out how it would support the "social, emotional, and behavioral needs (e.g., psychological services, counseling, social work, nursing, etc.)" of the students it was targeting. Id. ¶¶ 65-69. Finally, the recommendation criticized the absence of any licensing requirement for teachers at Fusion Academy and urged disapproval because of "Fusion's failure to provide data regarding teacher turnover rates, subject matter expertise, or its policy regarding teacher preparation time." Id. ¶ 78.

After a hearing on April 11, 2019, the School Committee denied the application. Members of the Committee told Fusion Academy that

if it addressed the recommendation's criticisms, there would be no reason to disapprove a second application.

### III. __Fusion Academy's Second Application__

On May 14, 2020, Fusion Academy submitted a reworked application addressing the criticisms. Defendants Trach, Berman, and Bach were designated to review the application and make a recommendation. Fusion Academy was provided with no substantive feedback, despite repeated inquiries as to the timeline and numerous offers to provide any missing information or documentation and to discuss any areas of concern.

On March 16, 2021, ten months after Fusion Academy submitted its second application, the School Committee listed Fusion Academy's application as a discussion item for its March 18, 2021, meeting. Fusion Academy was not given the opportunity to respond to the comments of defendant Trach and the Andover Superintendent at the meeting.

On March 23 or 24, 2021, Defendant Trach sent a fifteen-page memorandum to Defendant Bach recommending against approval. Bach endorsed this recommendation. The memorandum concluded that Fusion Academy's twenty-three hours of one-on-one instruction and twenty-three hours of teacher-supervised, in-person digital instruction per class per semester were not equivalent to fifty hours of teacher instruction in a class setting. It further stated that the model does not comply with the state's student learning time

regulation because the "self-study digital learning module does not meet the student learning requirement for in-person instruction" pursuant to the March 9, 2021, directive of the Department of Elementary and Secondary Education ("DESE") Commissioner. Id. ¶ 105. The recommendation was also critical of the application for embodying the plan for nursing coverage in a draft contract rather than a fully executed one, for a lack of evidence concerning whether Fusion Academy's instructional units meet state requirements for public schools, for varying the length of its courses in response to a student's pacing needs, and for utilizing outside providers to work with students with special needs.

On March 23, 2021, at about 3:00 pm, the Committee posted an agenda for its March 25 meeting with Fusion Academy's application listed as a vote item for hearing. Mid-day on March 24, the public agenda was changed to include the fifteen-page recommendation, dated March 23. Fusion Academy submitted a written response thirty hours later, an hour before the March 25 meeting. At the March 25 meeting, as at the March 18 meeting, Fusion Academy representatives were not permitted to speak or answer Committee questions when the application came up in the agenda; they were only permitted to address the recommendation during the general public comment session, prior to the start of the actual hearing on the

application. Fusion Academy asked that its response letter be read during the hearing, but the Committee refused.

The Committee denied the application four votes to one, based primarily on the recommendation. Committee members stated that a major consideration in denying the application was Fusion Academy's purported non-compliance with the DESE student learning time regulation. One Committee member voted in favor of approval, arguing the application review process had major flaws and that the Committee could not determine the equivalency between a traditional brick-and-mortar school and this one-to-one teaching model.

### IV.  Regulatory Overview

Under Massachusetts law, approval of private schools as an alternative to compulsory public-school attendance is vested in town school committees: "[S]chool committees shall approve a private school when satisfied that the instruction in all studies required by law equals in thoroughness and efficiency, and in the progress made therein, that in the public schools in the same town." M.G.L. c. 76, § 1. On October 2, 2007, the Commissioner of DESE issued an "Advisory on Approval of Massachusetts Private Schools Pursuant to Mass. Gen. Laws s. 76, § 1." See Dkt. 15-2. The Advisory emphasized that "[s]chool committee approval is neither an evaluation of program quality nor an endorsement of any particular school." Id. at 2. It advised, "In order to assist

private schools in its district, the school committee should have a written statement of policy and procedures by which it considers and acts upon private school applications for approval." Id. The Advisory contains a "suggested rather than mandatory" set of guidelines for what a policy should address, including the criteria for measuring thoroughness and efficiency, but noted that "because G.L. c. 76, § 1, does not specify the manner in which a school committee conducts its review process, school committees are afforded wide discretion in developing their own policies." Id. "The only requirement is that a school committee apply its policies and procedures consistently to all private schools located within its jurisdiction." Id. The Andover School Committee's published policy respecting its approval process for private schools merely parrots the statutory standard of "thoroughness, efficiency, and progress" without delineating criteria for meeting the standard or specifying the process or timeline for approval.

In a FAQ attached to the DESE Advisory, the Commissioner clarifies that certain state regulations do not apply to private schools. "The Student Learning Time regulations, as such, do not apply to private schools," so "while the school committee may consider the total student learning time and length of the school year at a private school in determining whether the school's program meets the statutory standard of 'thoroughness and efficiency,' these factors are not required for approval." Id. at

3. The standard generally "should not be interpreted as extending particular public school mandates regarding instruction and curriculum to private schools." Id. at 4.

The regulation governing public schools requires a minimum of 990 hours per school year of structured learning time. 603 CMR 27.04(2). "Structured learning time" is defined to mean all "time during which students are engaged in regularly scheduled instruction, learning activities, or learning assessments within the curriculum," including, in addition to classroom time where both teachers and students are present, "directed study, independent study, technology-assisted learning, presentations by persons other than teachers, school-to-work programs, and statewide student performance assessments." 603 CMR 27.02. A March 9 Directive indicated that hybrid and remote learning, which had been allowed at times during the Covid-19 pandemic, would no longer count toward structured learning time. See Jeffrey C. Riley, Massachusetts Department of Elementary and Secondary Education, "Guidance on In-Person Learning Requirements," https://www.masc.org/images/news/DESE_On-the-Desktop_Guidance-on-In-Person-Learning-Requirements.pdf.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

## DISCUSSION

### I.   Academic Freedom

Fusion Academy asserts that the denials of its applications deprived it of its right to academic freedom. It also argues that the denials of the application were arbitrary and capricious, and that "Defendants have unlawfully destroyed/deprived/interfered with Fusion Academy's liberty, business and property." Dkt. 1 ¶ 128.[1]

---

[1] The Town of Andover argues it cannot be held liable under § 1983 on a respondeat superior theory under Monell v. Department of Social Services of New York City, 436 U.S. 658, 691-95 (1978). The Court need not tarry because Plaintiff argues that the School Committee violated its rights. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-82 (1986) (holding a municipality can be sued under § 1983 for the acts of a body or official "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered").

### A. Standing

As a threshold matter, defendants argue that Fusion Academy lacks standing to assert any rights parents may have in directing the upbringing and education of their children. Fusion Academy responds by pointing to Pierce v. Society of Sisters, 268 U.S. 510 (1925). In Pierce, the Supreme Court reaffirmed the "liberty of parents and guardians to direct the upbringing and education of their children under their control." Id. at 534-35. While private schools cannot claim for themselves this liberty, they "have business and property for which they can claim protection." Id. at 535. The Supreme Court held that private schools can seek "protection against arbitrary, unreasonable and unlawful interference with their patrons and the consequent destruction of their business and property." Id. at 536.

The Supreme Court has consistently held that the owners of private schools were "entitled to assert the rights of potential pupils and their parents." Griswold v. Connecticut, 381 U.S. 479, 481 (1965); see also Runyon v. McCrary, 427 U.S. 160, 175 n.13 (1976) ("It is clear that the schools have standing to assert these arguments on behalf of their patrons."). Accordingly, Fusion Academy has standing to assert the rights of potential pupils and parents.

### B. Interference with Academic Freedom

Defendants also argue that Fusion Academy has not stated a claim of unlawful interference with academic freedom under the First Amendment. "Academic freedom, though not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment." Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265, 312 (1978); see also Keyishian v. Bd. of Regents of Univ. of State of N.Y., 385 U.S. 589, 603 (1967) ("That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom."). In Sweezy v. State of N.H. by Wyman, 354 U.S. 234 (1957), Justice Frankfurter delineated "four essential freedoms of a university—to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." Id. at 263 (Frankfurter, J., concurring).

The First Circuit has held that "private schools have a First Amendment right to academic freedom." Asociación de Educación Privada de P.R., Inc. v. García-Padilla, 490 F.3d 1, 11 (1st Cir. 2007). But it has also acknowledged that the state has the right and power "to promulgate reasonable regulations affecting private primary and secondary schools to ensure that minimum educational standards are met." Id. This is because primary and secondary schools "are vitally important in the preparation of individuals

for preparation as citizens and as vehicles for inculcating fundamental values necessary to the maintenance of a democratic political system." Id. (quoting Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 864 (1982)). Given this vital interest of the state, "the right to academic freedom in secondary education is necessarily more circumscribed than that of a university." Id. at 11 n.6. For example, states can insist that private institutions provide minimum hours of instruction, employ teachers of specified training, and cover prescribed areas of instruction. See id. at 11 (citing Bd. of Educ. Of Cent. Dist. No. 1 v. Allen, 392 U.S. 236, 246 (1968)).

"Because academic freedom rights must ultimately flow from the First Amendment, claims of their violations are subject to all the usual tests that apply to assertions of First Amendment Rights." Id. at 15 (quoting Omosegbon v. Wells, 355 F.3d 668, 676–77 (7th Cir. 2003)). Generally, "regulations intended to serve purposes unrelated to content of the regulated speech, despite their incidental effects on speech, expression, or message are subject to intermediate scrutiny," with the court determining whether the restrictions are narrowly tailored to serve a significant government interest and whether they leave open ample alternative channels for communication. Id. at 15–16. "Where the challenged regulation is indirect and content-neutral, the question of whether the incidental burdens on speech or academic

freedom trigger a First Amendment claim is a fact-sensitive one."
Asociación de Educación Privada v. Echevarría-Vargas, 385 F.3d 81,
87 (1st Cir. 2004). The First Circuit cautioned, "[I]t is wiser to
defer the determination of what standard of review to apply until
the case, and the nature of the First Amendment burdens, if any,
have been clarified through more factual development." Id. at 87
n.5.

Defendants argue that denying the application due to concerns
about the educational model's hours of instruction (23 hours of
"in-person" and 23 hours "asynchronized" per course per semester),
the lack of AP courses, the absence of standardized grading, and
the failure to require a Massachusetts license for teachers did
not interfere with any of Fusion Academy's core academic freedoms
and did not intrude into its "intellectual life." Dkt. 16 at 11-
12.

Here, the challenged decision is content-neutral, but the
Court has an inadequate factual record to weigh the substance of
the government's interests relative to any First Amendment burden
imposed on who may teach and how. Significantly, the Court does
not have Andover's recommendations or a transcript of its
proceedings to evaluate the nature of the burdens and
justifications. Accordingly, the motion to dismiss as to the
academic freedom claim is denied.

## II.  **Procedural Due Process**

Fusion Academy argues it was deprived of its liberty and property interests in violation of its procedural due process rights when the application was denied without sufficient notice or opportunity to comment.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). Here, Fusion Academy has a liberty interest in its academic freedom and arguably a property interest in the amount expended on the lease of the school site.

The First Circuit has outlined the contours of procedural due process:

> The essentials of procedural due process comprise notice of the charges and a reasonable chance to meet them. The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.' As the rubric itself implies, 'procedural due process' is simply 'a guarantee of fair procedure.'

Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (citations omitted). Defendants argue that Fusion had just that: notice and an opportunity to be heard, both orally and in writing. Fusion Academy responds that it was only given about forty-eight hours-

[14]

notice of the hearings and twenty-four hours-notice to respond in writing to the lengthy recommendation against its approval, despite the ten-month review of its application. It further responds that it was not allowed to participate in the discussion of its application to refute inaccuracies in the recommendations, but rather was only allowed by the Committee to speak during the public comment section at the beginning of the meeting. Fusion Academy has alleged sufficient facts to state a claim that the notice and opportunity to be heard was not meaningful or adequate to address the recommendation against its application.

However, inadequate process in the moment does not always amount to a due process violation. See generally Hudson v. Palmer, 468 U.S. 517, 530-34 (1984) ("[A]n unauthorized intentional [or negligent] deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). "[W]hen a state official is not acting pursuant to established state procedure, the state is not in a position to provide anything other than such postdeprivation remedies." Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992); see also Hadfield v. McDonough, 407 F.3d 11, 20 (1st Cir. 2005) (holding postdeprivation remedies are sufficient "when the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself").

[15]

The First Circuit has held that "where a state has provided reasonable remedies to rectify a legal error by a local administrative body," such as "avenues of appeal to the state courts," due process has been provided and "section 1983 is not a means for litigating the correctness of the state or local administrative decision in a federal forum." Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1982); see also Chongris v. Bd. of Appeals of Town of Andover, 811 F.2d 36, 40 (1st Cir. 1987) ("Where state procedures—though arguably imperfect—provide a suitable form of predeprivation hearing coupled with the availability of meaningful judicial review, the fourteenth amendment guarantee of procedural due process is not embarrassed.") (citing id. at 829–30).

Here, although the predeprivation hearing before the School Committee was deficient, Defendants correctly argue that Fusion Academy has been provided a reasonable remedy: certiorari review in state court. See M.G.L. c. 249, § 4 ("A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law . . . may be brought in the supreme judicial or superior court."); see also State Bd. of Ret. v. Bulger, 843 N.E.2d 603, 606 (Mass. 2006) ("General Laws c. 249, § 4 provides for limited judicial review in the nature of certiorari to correct errors of law in administrative proceedings where judicial review is otherwise unavailable."). Accordingly,

the procedural due process claim is denied based on postdeprivation remedies.

### III. __Substantive Due Process__

Defendants argue that their conduct did not violate the substantive due process rights of Fusion Academy. Fusion Academy responds, without elaboration, that Society of Sisters is "sufficient to show that the defendants' argument under this heading does not hold water." Dkt. 21 at 15.

"[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992)). The applicable standard is that the abuse of power must "shock[] the conscience" and violate the "decencies of civilized conduct." Id. (quoting Rochin v. California, 342 U.S. 165, 172–73 (1952)). "[I]n order to shock the conscience, conduct must at the very least be extreme and outrageous, or, put another way, truly outrageous, uncivilized, and intolerable." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (cleaned up). "'Mere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior." Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005)). "[T]his unforgiving standard guards against 'insinuat[ing] the oversight and discretion of federal judges into areas traditionally reserved for state and local

tribunals.'" Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001) (quoting Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)). The door has only been left "slightly ajar" for a truly "horrendous situation[]." Nestor Colon Medina, 964 F.2d at 45.

Fusion Academy contends that the motivation for Defendants' opposition to its school was to avoid expending additional funds on students with special needs. For example, Chairperson Shannon Scully allegedly stated that "it was 'a giant red flag' for her that Fusion Academy was targeting special education families." Dkt. 1 ¶ 121. Even if the School Committee was motivated by such funding concerns, defendants' alleged behavior fails to shock the conscience, and Fusion Academy fails to state a claim for violation of substantive due process.

### IV.  **Qualified Immunity**

Defendants argue that the three individual defendants, sued in their personal capacities, are entitled to qualified immunity because "a reasonable defendant would [not] have understood that [its] conduct violated the plaintiff['s] rights." Dkt. 16 at 18 (quoting Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)). Defendants explain that there is no First Circuit authority that would have put the individuals on notice that their conduct in recommending the School Committee deny Fusion Academy's application violated any clearly established rights of Fusion

Academy. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

Fusion Academy responds that the three individual defendants made their recommendations based on the state laws applicable to public schools even though DESE guidance explicitly precludes extension of these mandates to private schools. But an FAQ attached to an advisory from a state department is not "clearly established law" for the purposes of the qualified immunity analysis. There is no clear caselaw in the First Circuit or Supreme Court that erroneously denying an application for failure to meet the state mandates, without more, would violate the clearly established First Amendment rights of the applicant. The individual defendants are entitled to qualified immunity and the claims against them are dismissed.

## V.   **Comity**

Plaintiff asks the Court, pursuant to 28 U.S.C. § 2201, to declare that both applications satisfied the requirements of M.G.L. c. 76, § 1. A court, "[i]n a case of actual controversy within its jurisdiction, . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. This Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952); see also Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). "[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Wycoff, 515 U.S. at 243.

The question of whether Fusion Academy's proposed school equals Andover public schools "in thoroughness and efficiency, and in the progress made therein," is quintessentially a state-law issue better handled by the School Committee and the state courts. In the interest of comity, the claim for a declaratory judgment is dismissed to the extent it raises a state-law claim.

## ORDER

After hearing, for the reasons stated above, the Motion to Dismiss (Dkt. 15) is **ALLOWED IN PART** and **DENIED IN PART**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge