UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

FUSION LEARNING, INC.                )
     Plaintiff,                      )
                                  )
     v.                          )
                                  )     C.A. No. 1:21-cv-11059-MJJ
ANDOVER SCHOOL COMMITTEE,   )
TOWN OF ANDOVER D/B/A ANDOVER  )
SCHOOL DEPARTMENT D/B/A ANDOVER )
PUBLIC SCHOOLS, et al           )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF TAX RETURNS

Plaintiff, Fusion Learning, Inc. ("Fusion"), opposes defendants' motion to compel production of its federal income tax returns ("Returns") for two reasons, each of which can be stated succinctly. However, since defendants suggest in their moving papers that Fusion has been remiss in meeting its discovery obligations, Fusion adds a longer Section III below, lest those suggestions be deemed credible.[1]

In this opposition, which is supported by the affidavit of David Martin ("Martin Aff"), the individual responsible for Fusion's tax compliance and also the individual whom Fusion expects to be its primary damages witness at trial, Fusion first shows that the Returns are not relevant

---

[1] Among other derogatory comments, defendants refer to Fusion's "belated claim of future lost profits;" and they say that "Fusion claimed, for the first time (and nearly two years after discovery in this matter closed)…." *Doc No.189 at 2.* As Section III shows, Fusion listed "Planned Operating Income" when it first responded to defendants' interrogatory asking about damages, long before fact discovery ended. That first response listed this category of damages at $644,976, not yet into the millions but not too far away. Although Fusion did not explicitly state that this category of damages would rise over time, that inference was unmistakable. When it first supplemented its answer, the category had, indeed, risen to $1,460,897

within the meaning of Rule 26(b).[2] It next shows that defendants have waived the right to compel

production. In the last section of this opposition, Fusion refutes the unsupported claims of

defendants that Fusion has, in some unarticulated fashion, violated its discovery obligations.

Fusion shows that it has consistently updated the calculation of the category of damages referred

to here as lost opportunity damages.[3] Moreover, going beyond what the Rules require, Fusion has

clearly explained to defendants how its calculations have been made.

One point to bear in mind is that Fusion's lost opportunity damages are based on

projections made in connection with its decision to apply to open a school at Andover. Thus,

there is no set of financial records that shows actual profit at the non-existent Andover school.

### I.       The Returns Are Not Relevant

The Returns do not reveal anything about Fusion's damages arising from the lost

opportunity to earn a profit from the school that defendants refused to approve, in violation of

Fusion's constitutional rights. Nor can the Returns lead to other matters that could bear on those

damages.

As a preliminary matter, courts, recognizing their confidential nature and the strong

public policy against routine disclosure, apply a heightened standard to the discovery of tax

returns. Even where some marginal relevance can be shown, a party seeking tax returns must

demonstrate a compelling need for the information and that the same information is not

otherwise available from less intrusive sources. *See In re Hampers, 651 F.2d 19, 23 (1st Cir.*

*1981)* (recognizing a qualified privilege for tax returns and requiring a showing of necessity).

Defendants here cannot meet this requirement and do not even try. They have long possessed

---

[2] The opposition is also supported by the affidavit of James Ackerman ("Ackerman Aff"), who simply authenticates certain documents.
[3] Its interrogatory answers list the category as "Planned Operating Income."

school-level financial data, projections, and analyses upon which Fusion's lost opportunity damages rest. None of those materials relies on tax return data, and none is contradicted or tested by consolidated tax reporting prepared under the Internal Revenue Code.

Defendants seem to base their motion to compel on the unspoken assumption that the Returns will enlighten them either about an Andover school that has never come into existence or about the absence of profitability of existing schools, from which defendants can argue that Fusion's lost opportunity damages are not evidence-based. Their assumption is wrong. The Returns will reveal nothing about Fusion's damages.

Fusion is one of a group of entities owned by FEG, Inc. ("FEG"). David Martin is the CFO of FEG and Fusion. The entities owned by FEG are AEG Holding Co., Inc. ("AEG") and Futures In Education, Inc. ("Futures"). AEG, in turn, owns Fusion and Barnstable Academy, Inc. ("Barnstable"). Of these entities, Futures, Barnstable and Fusion all operate now or have operated schools. AEG and FEG do not operate any schools but do perform a variety of functions for the school operating entities. *Martin Aff ¶ 2.*

FEG files a consolidated federal income tax return for itself and the other entities. As the name suggests, a consolidated return reports the results of all of the reporting entities in a homogenized manner. Results for each of FEG's subsidiaries with school operations are not broken out separately. In addition, a consolidated federal return must, generally speaking, eliminate transactions between group members. This requirement has the potential to distort income, deductions, gains and losses at the level of each constituent entity. *Martin Aff ¶¶ 4-6.*

Yet another problem with defendants' assumption is that tax reporting does not follow financial reporting. FEG and its affiliates, including Fusion, follow generally accepted accounting principles ("GAAP") to track the results of operations, including operating income,

3

which is a GAAP metric.[4] The Internal Revenue Code does not permit taxpayers to report taxable income according to GAAP. Instead, it has particular rules for returns that create material differences from GAAP reporting. Fusion's lost opportunity damages claimed in this action are based on its internal financial projections, which, in turn, are based on GAAP. *Martin Aff ¶¶ 8-12.*

Even if Fusion filed its own federal income tax returns, without any data from affiliated entities, they would be irrelevant. One way to grasp the mistaken notion inherent in defendants' desire to get the Returns is to think about what might be disclosed in the federal income tax returns of Starbucks Corporation. It is inconceivable that the returns would contain any data leading to information about the profitability of one coffee shop. While Fusion does not have as many schools as Starbucks has coffee shops, it does have over 80. A Fusion-only return would homogenize the results of all of the schools into one number. Unless Fusion operated each school as a separate corporate entity, each of which filed its own return, there would be no way to figure out the profitability of a given school. *Martin Aff ¶ 7.*

Consolidated tax returns prepared under non-GAAP rules do not reflect school-level profitability, do not correspond to Fusion's damages methodology, and would only introduce confusion if used at trial. For these reasons, the Returns are completely irrelevant to an understanding of Fusion's damages for its lost opportunity to earn a profit at Andover.

**II.      Defendants Have Waived A Right To Compel**

In order to grant the motion, defendants must show the Court "good cause," Rule 16(b)(4), why the operative scheduling order, agreed to by the parties and entered electronically on August 29, 2023, should be modified. That order stated: "Fact discovery to be completed by

---

[4] FEG's financial statements also include some non-GAAP metrics, such as EBITDA. *Martin Aff. ¶ 9.*

10/31/23.[…] **No further extensions will be allowed."** (Emphasis in original.) They cannot make the required showing.

When a litigant's motion to compel discovery is untimely, as this one surely is, it must be denied. Our appellate court in *Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86 (1st Cir. 1996)*, made the point emphatically. Appellants had waited more than one month beyond the discovery deadline to move to compel production. They told the court that appellees were "hiding" information. The First Circuit found this claim "essentially irrelevant against the backdrop of [appellants'] own lack of diligence…." *Id. at 94. See, also, DesRosiers v. Moran, 949 F.2d 15 at f. 8 (1st Cir. 1991)* where the court noted failure to bring non-production to a court's attention in a timely fashion is generally deemed to be a waiver of the right to do so. As held in *Wooten v. Virginia, 2015 WL 13658068 (W.D.W.V. 2015) at 1*, "[c]ourts generally consider motions to compel untimely when they are filed after the discovery deadline."

Judge Hillman, in a decision notable both for its economy of words and breadth of supporting citations, found that a delay in moving to compel of four months beyond the discovery cutoff date was too much. In *Bourgos-Martinez v. City of Worcester, 345 F.Supp.3d 105 (D. Mass. 2018)*, he rejected as inadequate the excuse that counsel failed to move sooner because of the press of other business. Quoting *Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315, 315 (1st Cir. 1998)* for the proposition that "litigants have an unflagging duty to comply with clearly communicated case-management orders," he held that four months after the deadline was too much delay.

The moving defendants here waited, not two weeks beyond the deadline as in *Wooten,* not something between one and two months as in *Ayala-Genera* , not four months as in *Bourgos-Martinez.* They are moving more than three years after Fusion objected and two and a half years

after the close of fact discovery on October 31, 2023. If there were any objectively reasonable basis to think that the Returns would shed light on Fusion's damages, it is inconceivable that defendants would have sat in silence for 30 months and then moved to compel two months before trial. Fusion told defendants that it objected to the production of Returns on November 22, 2022. *See Doc No. 190-1 at 7 (Exhibit A at 7, Fusion's response to requests to produce)*. Defendants had ample time to move to compel during the period assigned for fact discovery. They chose not to do so.

The standard definition of waiver requires an "intentional relinquishment of a known right." *Heller v. Cap Gemini Ernst & Young Welfare Plan, 396 F. Supp. 2d 10, 23 (D. Mass. 2005)*. As soon as Fusion provided its objection to the request for returns, more than three years ago, defendants knew where Fusion stood on the issue. Defendants cannot plausibly claim that they were unaware of the fact discovery cutoff date or the need to ask the Court to compel production. Defendants had ample time before discovery closed to develop a record that the returns somehow would shed light on Fusion's damages claim. Their vanishingly small discovery aimed at damages revealed no interest whatsoever in such development.[5]

On May 23, 2023, they took Mr. Martin's deposition. In response to specific questions, he testified that, from an operating perspective, FEG lost money over the previous five years. Within the next minute, he was asked whether Fusion schools were profitable. Martin answered: "The Fusion schools at the school level, yes, they are profitable." Martin Depo. at p. 25, attached as Exhibit 1 to the Ackerman Aff. In short, he told defendants that the financial results at the level of a Fusion school and at the FEG level were disconnected. Defendants could have asked

---

[5] Prior to the cutoff date, they propounded two interrogatories, asking for: a) evidence that an Andover school would be profitable; and b) for the information required by Rule 26(a)(1)(A)(iii). Fusion answered without objection. They also asked a few deposition questions of three Fusion deponents. Aside from seeking the production of tax returns, they made no request to produce documents about damages and they designated no expert to opine on damages.

6

him whether the returns would be useful in assessing Fusion's damages and, if not, why. No such questions were asked. They could have asked whether Fusion's damages calculations, as Fusion had produced them as of that time, used data from the returns. No such questions were asked. It is important to note here that Martin's deposition took place months after Fusion had responded in an interrogatory answer that one category of damages was lost opportunity to earn a profit.[6]

In response to some questions that were asked, Mr. Martin explained that profit and loss data is maintained for each Fusion school, including its three Massachusetts schools (Martin Depo. at pp. 47–50, attached as Exhibit 1 to the Ackerman Aff.). When defendants thereafter asked for profit and loss data for the three Massachusetts schools, Fusion produced the data in less than 30 days. Moreover, without being requested to do so, Fusion voluntarily updated that data. *Ackerman Aff ¶11*.

Defendants offer the excuse that "Fusion's assessment of its damages drastically changed" in July 2025. *Doc No.190 at 4*. Fusion disputes that the change to its "assessment" changed drastically. Fusion simply updated its calculations to account for the passage of time and new information from defendants, matters that Fusion explains in detail in Section III below.

Even if defendants could somehow be absolved of their delay for years beyond the close of fact discovery, which they cannot, what is their excuse for waiting from July 2025 until March 2026, to move to compel? There is none that provides good cause.  They waived whatever remained of a right to compel production of the Returns when they failed to move in July of 2025.[7]

---

[6] Fusion details in Section III below the progression of the dollar number as time marched on. However, once it first alerted defendants that it was seeking lost opportunity damages, it was evident that this category of damages would increase over time. Lost profits after three years of hypothetical operation would likely be less than lost profits after four years, which, in turn, would likely be less than lost profits after five years.

[7] In December 2025, defendants sought to compel production of a different document, namely a 90-plus page, independent valuation report of FEG, done in 2024. *Doc No. 178*. When Fusion decided voluntarily to produce the report, defendants moved to withdraw their motion to compel, *Doc No. 187*, which the Court granted on January 14.

It is too late now to consider whether the Returns should be produced. Defendants have waived their right to move to compel production.

### III.    Fusion's Compliance with Disclosure and Discovery Obligations

On the off-chance that the Court looks beyond relevance and waiver in its consideration of the merits of defendants' motion, Fusion needs to set the record straight about its compliance with the requirements of the rules governing disclosure (Rule 26(a) and (e)) and production (Rule 34). Defendants' attacks are wholly unwarranted. If defendants have been surprised at the size of Fusion's damages claim, they need to look in the mirror to understand why. As set forth below, Fusion shows that it has bent over backwards to provide defendants with information abouts its damages, particularly about the lost opportunity category. Indeed, defendants even said as much to the Court three months ago: *"Fusion has been responsive to the Defendants' requests for additional information pertaining to its damages calculation." Doc No. 179 at 8*. Nothing has changed between December 9, 2025 and March 9, 2026.

The following recitation of Fusion's discovery/disclosure compliance is a shortened version of information found in a letter from Fusion's counsel to defendants' counsel, dated November 25, 2025, which defendants appended as Exhibit E to their papers, *Doc No. 179-5,* moving to compel production of the valuation report referred to in footnote 7 *supra.*

On August 9, 2022, the defendants served Fusion with its first set of interrogatories. The set included a request that Fusion "provide a computation of each category of damages," parroting Rule 26(a)(1)(A)(iii). After agreed extensions, Fusion timely answered on October 31, 2022. Fusion has attached as Exhibit 2 to the Ackerman Aff. the answer to this interrogatory. As

---

2026. In Section III of this opposition below, Fusion goes into detail about the valuation report and the interaction between the parties in connection with it. Why defendants failed to seek the Returns in connection with that motion is unexplained and inexcusable.

is evident from the most cursory inspection of Exhibit 2, Fusion listed "Planned Operating Income Years 1-4" as a category of damages. The dollar number in the exhibit comes directly from a rather complex spreadsheet that Fusion calls a SOAR, an acronym for School Opportunity Assessment Review.[8] The entire SOAR, which is subject to the Court's confidentiality order, was produced as part of Fusion's response to defendants' first request for production of documents early in the litigation.[9] During fact discovery, Fusion imposed no limitations on the freedom of defendants to inquire at deposition about the Andover SOAR or how the number reflected in the answer to interrogatory no. 4 was derived from the SOAR.[10]

Fusion wishes to draw the Court's attention to a key aspect of this interrogatory answer, which is dated October 31, 2022.  At the outset of its application process, Fusion had anticipated that its Andover school would have had four fiscal years of operation by that date. Thus, the entry for Planned Operating Income made crystal clear that the number would grow as time went by. If another year elapsed, it was evident that the amount of planned operating income would grow. How it would change was, at least through year five, readily determinable by reference to the SOAR. *Martin Aff ¶12*. When Fusion later supplemented this answer, the number of years did increase, and the dollar number grew accordingly. *See Exhibit 3 to Ackerman Aff.*

Fusion will pause the narrative of its discovery compliance to note here that defendants *never* made a request for production of documents relating to the category of damages labeled

---

[8] Fusion's Martin was questioned at some length during his deposition about Fusion's use of a SOAR.

[9] The SOAR page showing projected profit and loss was explicitly noted in Fusion's answer to another interrogatory contained within defendants' first set. *Ackerman Aff at ¶6.*

[10] In fact, there is no mystery to the derivation. The simplest arithmetic provides the answer. One of the multiple pages of the SOAR, captioned "Annual P&L Summary," has a line entitled "Operating Income." This line projects the result of operations of a proposed school for each of its first five years. One need only add up the years where the spreadsheet projects operating income, deducting from that total any projected annual operating loss, in Andover's case the first two years, and you have the "planned operating income" at the end of five years. *Martin Aff at ¶12.*

"Planned Operating Income" and did not make an inquiry at deposition concerning the "Planned Operating Income" line in Fusion's answer to interrogatory no. 4.

Over the course of time, without prompting from defendants, Fusion supplemented its initial answer to interrogatory no. 4 on three occasions. It did so on March 1, 2023, eight months before the close of fact discovery, and again on July 10, 2025. The latter date was one week after the Court's summary judgment decision, which made clear that the case was going to trial. On each occasion, the dollar number for Planned Operating Income grew because more years had elapsed. Fusion has attached those supplements at Exhibit 3 and Exhibit 4 to the Ackerman Aff.

The third supplement occurred on August 29, 2025, necessitated by the defendants, who had, shortly before that date, informed Fusion that its goal of opening an Andover school would not be a topic of mediation. Since this goal was no longer a part of Fusion's future, the damages disclosure had to be updated from a series of annual increases in loss to a total loss.

This supplement took the category "Planned Operating Income" to its logical conclusion. It added a standard financial analysis concept referred to as a "terminal value."[11] This value provides the present value of operating income beyond a forecast period.[12] By analogy, if the town of Andover took a commercial property by eminent domain, the owner would not be content to accept the present value of one or three or five years of operating income or rental income. It would want, and a court would award, operating or rental income for a theoretically infinite period of time. *See Correia v. New Bedford Redevelopment Auth., 375 Mass. 360, 362*

---

[11] Since there are two standard methods to arrive at a terminal value, Fusion provided numbers for both methods. *Martin Aff ¶11.*

[12] "Terminal value" shows up in innumerable judicial opinions*. See*, *e.g., Estate of Michael Jackson, T.C. Memo 2021-48,* containing an extensive discussion of valuation methods, including terminal values*; BTR Dunlop Holdings, Inc. v. C.I.R., T.C. Memo 1999-337 at 7; Cede & Co. v. Technicolor, Inc. 1990 WL 161084 at 8; Steiner Corp. v. Benninghoff, 5 F./Supp.2d 1117, 1132 (D. Nev. 1998).* In *Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.,* 477 F.3d 583 (8th Cir. 2007), the court of appeals held that it was error for the trial court to set aside the jury's award of terminal value damages as speculative. *Id. at 594.* It agreed with the plaintiff that "terminal value is a well accepted concept under the law." *Id. at 593.*

*(1978)* (capitalization of net income as one of the three standard methods of determining fair market value in eminent domain proceeding).

It is important to note that a terminal value for the Andover school did not increase the "category" of damages that Fusion is claiming. It merely telescoped the increases in this category from a series of annual bumps to a final number representing the value of the school upon disposition. Fusion's claim of a terminal value makes sense because it cannot return, year after year, to ask a jury to award damages for another year of lost opportunity damages. This fact was never hidden from defendants.

What happened next is important. In response to Fusion's August 29 supplement, defendants propounded a large number of "information requests," which Fusion has attached as Exhibit 5 to the Ackerman Aff. This exhibit includes Fusion's responses to defendants' requests. The responses show that Fusion did not argue about the fact discovery deadline or engage in typical discovery quibbling. Instead, it promptly provided a large amount of information over a short period of time. The absence of additional information requests from defendants strongly suggests that Fusion's responses have satisfied their inquiries.

After Fusion disclosed that its calculation of a terminal value had drawn on two discrete numbers contained within a 90-plus page, independent valuation report of FEG, defendants requested the entirety of the report rather than just the parts showing the numbers that Fusion had used as a part of its calculations. Initially, Fusion resisted the request because it does not regard the report's contents to be relevant, aside from the pages with the two data points used in its calculations. The report, which Fusion commissions annually in order to value securities issued as part of a commonly used employee benefit program,[13] has a great deal of confidential

---

[13] The IRS has published rules that issuers of such securities follow in order to minimize tax problems arising from this form of compensation. *See Doc No. 13-1 at ¶¶10-11 (Martin affidavit filed on December 19, 2025).*

information. Defendants moved to compel on December 9, 2025. *See Doc No. 178*.  Although

Fusion's view of the report did not change, it was persuaded by defendants' claim that production

of the full report would enhance prospects of successful mediation. It, therefore, dropped its

opposition and produced the entire valuation report on January 14, 2026. Defendants then

withdrew their motion to compel. *Doc No. 187*.

By way of a Section III summary, Fusion can do no better than to repeat again

defendants' characterization of its discovery compliance: ***"Fusion has been responsive to the***

***Defendants' requests for additional information pertaining to its damages calculation."*** *Doc*

*No. 179 at 8* (emphasis added).

### IV. Conclusion

For the above reasons, Fusion respectfully requests that the Court deny defendants'

motion to compel the production of the Returns.


FUSION LEARNING, INC.

By its attorneys,

*/s/ Joseph J. Wadland*
*/s/ James L. Ackerman*
Joseph J. Wadland, BBO No. 548531
Email:  jwadland@wadacklaw.com
James L. Ackerman, BBO No. 011650
Email:  jackerman@wadacklaw.com
Wadland & Ackerman
Two Dundee Park, Suite 102
Andover, MA  01810
Dated: March 19, 2026        Tel. (978) 474-8880

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy will be served upon those indicated as non-registered participants on March 19, 2026.


*/s/ Joseph J. Wadland*
Joseph J. Wadland, Esq.